## Case No. 12,819.

### SHREWSBURY v. The TWO FRIENDS.

#### [Bee, 433.] [1]

Admiralty Court, South Carolina. Jan., 1786.

MARITIME LIENS—REPAIRS—POSSESSION.

A shipcarpenter has no lien for repairs, after the vessel is out of his possession, if the contract was made on land, and the owners reside in the place. See Clinton v. The Hannah [Case No. 2,898].

[Followed in Pritchard v. The Lady Horatio, Case No. 11,438. Cited in Levering v. Bank of Columbia, Id. 8.287. Approved in Ramsay v. Allegre, 12 Wheat. (25 U. S.) 619. Cited in Bains v. The James & Catherine, Case No. 756; The Draco, Id. 4,057; The Stephen Allen, Id. 13,361. Cited in dissenting opinion in Jackson v. The Magnolia, 20 How. (61 U. S.) 333; Cunningham v. Hall, Case No. 3,481.]

[Cited in Re The Josephine, 39 N. Y. 26.]

In admiralty.

In this cause of Shrewsbury v. The Sloop Two Friends, the following appears to be a short state of the case: That the vessel, with an American register, is owned partly by a foreign merchant, but now resident here; and partly by a citizen of the state of Georgia, who resides there. That soon after her arrival in this port, the foreign part owner attached in the court of common pleas, the remaining property of the other in her, for a debt due to him by the said other part owner. That a claim was set up against the moiety attached by a third person, who asserted that a sale thereof had previously been made to him; which contest is still pending in the court of common pleas. That after the attachment, and while the vessel continued in the custody of the sheriff, (but by his permission remaining in the possession of the plaintiff in attachment,) Shrewsbury, a shipwright, was employed to repair her. (And here there was a variety and contradiction in the evidence produced, whether Shrewsbury was employed by the master, or the foreign part owner; there being positive swearing to each.) That the vessel being removed out of Shrewsbury's dock, he applied to this court, for a warrant to arrest her, for the repairs; which warrant issued, and was ex-

1 [Reported by Hon. Thomas Bee, District Judge.]

ecuted by the marshal, during the absence of the sheriff.

On the return of the warrant, a motion was made in behalf of the foreign part owner, that it be quashed; and the motion was supported on the following grounds: 1st. That the vessel being in custody of the sheriff, was not within the jurisdiction of this court. 2d. That the repairs being made on the vessel in port, and not while on a voyage, but by owner's order, and she being hypothecated neither by the master, nor owner, the vessel was not liable, but recourse must be had to the owner.

This motion was opposed in behalf of the actor, 1st, on the general principle, that for all repairs made and necessaries supplied to a vessel, she is liable; that an hypothecation is always implied whether executed in form or not: and that properly, only one moiety could be said to be in the custody of the sheriff; 2d, but that however the rule might be with regard to repairs and necessaries supplied at home, and in the port to which the vessel belongs; there is a difference when she is in a foreign port; that this is settled by the resolutions of all the judges in Charles I. time, as reported in Cro. Car. 216, and that Charleston is to all intents and purposes, a foreign port, both to the vessel and owners; that it would be hard, if it was otherwise; for as the owner was a foreigner, and perhaps had no other property in this state, the shipwright might lose his debt, or not obtain any security for it, if the vessel was not liable.

To this last argument, it was replied, that the owner had offered any security to the shipwright, if he would wait the determination of the suit in the common pleas, concerning the attached moiety; and that he had indeed reconducted the vessel into the shipwright's own dock, where she now lay.

DRAYTON, District Judge. This being a short state of the case, and of the arguments offered on both sides, the court is now to pronounce an opinion and decree upon the whole. The principal points to be considered and determined, I think, are the following: 1st. Whether a vessel is liable for all repairs and necessaries in general, at any time and in any circumstances. Or, 2d. Whether a distinction is to be taken, and a difference made; and that she may be liable in particular cases, and not in others; and lastly, whether, her being a foreign vessel, and owned by a foreign merchant, will make any difference in the general rule on such occasions.

And with regard to the first and second points, I conceive the law to be clear and settled. The jurisdiction of this court extending only to maritime causes, it cannot take cognizance of any transactions or contracts which arise on land. And herein I distinguish thus: Where a vessel is lying in port, and the owner is there present, all matters and contracts, relative to her, must be supposed to be entered into by him on shore; and consequently to be infra corpus comitatus; and redress and satisfaction, in case of any dispute on the occasion, must be sought in the courts of common law. But where a vessel is on a voyage, and by stress of weather, or other accident, puts into a port, the occasion happening at sea, and on her arrival in port no owner being present, to whose personal credit recourse may be had for necessaries, the master, ex necessitate rei, has a right to procure them on the security of the vessel; and to obtain payment on that security, this is the proper and only court to apply to. This distinction is plainly laid down and taken notice of in all the cases, where this matter has been agitated.

I will examine the several authorities which have been cited in the present case, for and against this opinion; and from them shew the reasons upon which I ground mine. Much stress has been laid by Mr. Read, on the resolutions of the judges as reported in Cro. Car. 216, in support of his argument. I shall make some observations on those resolutions. In the first place, it does not appear, that they were an adjudication on any particular case before the court. They seem merely gratis dicta; and this interpretation so favourable to the extent of the admiralty jurisdiction, was made but a few years after the remarkable contest between the judges of that court and of the common law courts, which is mentioned in the 4th Institutes. The court of admiralty at that time, claiming almost every thing; perhaps the other at first, thought it necessary to concede something more than they had a legal right to. At least it proves that some doubts prevailed on the subject; and that the jurisdiction was either not well understood, or settled on one side. It is remarkable too, that these resolutions, which are inserted in the first editions of Croke, do not appear in the later. I observed the edition Mr. Read quoted from is of 1657. Upon referring to mine, which is of 1669, I find them omitted. See Clinton v. The Hannah [Case No. 2,898]. From whence there is a seeming implication, that upon better consideration, they were held not to be of authority; and were therefore omitted. This is confirmed by an adjudication in the same reign contradicting them. It is in Bridgeman's Case, Hob. 11. There, says the chief justice, "The admiralty court hath no power over any cause at land; for both by the nature of the court, and by the statute, it is to meddle with things arising upon the seas. But (he goes on) I was of opinion clearly, that the admiral law is reasonable, that if a ship be at sea, and take leak, or otherwise want victual or other necessaries, whereby either herself be in danger, or the voyage defeated, that in such a case of necessity, the master may impawn for money, or other things to relieve such extremities, by employing the money so; for he is the person trusted with the ship and voyage, and

therefore reasonably, may be thought to have that power, rather than see the whole lost. But in this case, the faults were, that neither the contract, nor the impawning were said to be for any such cause, nor was the impawning said to be at sea." And lastly, the authority contended for under those resolutions is denied by all the subsequent, and late determinations on the subject. The first (Moll. de J. Mar. 333), though short, is express to the point. In Justin's Case, 1 Salk. 34 (but better reported 2 Ld. Raym. 805), it is expressly laid down, "that as it did not appear the ship was on her voyage, when she was in distress, and the contract made for the cable and anchor, the case was out of the admiralty jurisdiction." I shall have further occasion to refer to this case hereafter.

The next in point of time is Watkinson v. Bernardiston, 2 P. Wms. 367. There it was likewise determined, "If a ship is in the Thames, and money is laid out for repairs, &c. it is no charge on the ship; but the person employed must resort to the owner. But if at sea, (i. e. if on a voyage) and no contract can be made with the owner, the master, ex necessitate rei, may hypothecate the ship for repairs." Here the distinction is fully expressed; the circumstances fixed, and the reason explained: "On a voyage;" and because the "owner is not present." Of course the inference is, that if she is not on a voyage, and if the owner is present, there is no such claim on the ship, nor any such power in the master. The master's power arises only in the absence of the owner, as his substitute and representative; and even in the owner's absence, he is not empowered on all occasions to make the ship or owner liable. "For if he takes up money to mend or victual the ship, when there is no occasion, he only is liable. And it is but reasonable, that the person advancing the money should take care, that he lends it upon such an occasion, as that the master's act shall bind the owner." These are Molloy's words, as cited in Coop. 638, which was quoted by Mr. Read. It shews that the supplier of necessaries, or carpenter who repairs, runs some risque; that he ought to act cautiously, and particularly when the owner is present. For in the last case, I conceive the master cannot hypothecate the vessel; and if he did, that such hypothecation would be void, and not binding on the vessel. But neither does that case, nor the other in Doug. 97, quoted by Mr. Read, contradict this opinion. In the first Lord Mansfield says, "Whosoever supplies a ship, has a treble security; the master, the ship, and the owner." True he has so: he has the security of the ship in all cases, by lien, while she continues in his possession; and in particular cases, where she is properly hypothecated, whether in his possession or not. He has besides, the personal security of the master, or owner, in either case. I deny neither position. In the second (Doug. 97) his lordship says positively and expressly, "Work done in England on a ship, is on the personal credit of the employer; but in foreign ports, the master may hypothecate." That is, he may hypothecate under the circumstances, and for the reason mentioned in 2 P. Wms. 367.: "Because the ship is on a voyage, and the owner is not present." This distinction is continued through all the cases. And with regard even to a lien, Lord Mansfield speaks only hypothetically; if there was any lien, it was in the carpenter. And the general practice of shipwrights, as mentioned in the same case, seems to shew, that they looked more to the employer, than to the ship for security. However, it is, I confess, my opinion, that the shipwright has a lien on the vessel, so long as she is in his possession. But the lien extends no farther than as a security; and does not give him power to sell, nor this court to order it. And herein consists the difference between a lien and hypothecation.

I come now to the last point, whether this being a foreign vessel and owned by foreign merchants, makes any difference in the general rule laid down? I cannot allow, that this question is applicable to the present case. How is either this vessel or this port foreign, when the vessel is registered as American, when she is owned partly by a citizen of the United States, and partly by a merchant who, though not a citizen, is engaged in a commercial connexion here; and is at present settled here? This is now his home; and Charleston harbour in the present case is quasi the river Thames, in those reported in the English books. But admitting the objection in its fullest force, I do not find that the law has made any difference on the occasion. On the contrary, there is a case directly in point, which settles it. It is that of Justin's Case, before quoted. There the ship belonged to Norway; her owners were foreigners, and London to both was a foreign port. There likewise were urged the same reasons, as at present, to make the vessel liable. "The defendant would be without a remedy, if a prohibition should be granted. Because, the master of the ship with whom he contracted, was dead, and the part owners were foreigners." But the court said there, as I do here, "Because it does not appear that the ship was on her voyage, when she wanted the anchor and contracted for it, it is a contract made with the master on land; and is the common case."

It appears that the sloop Two Friends was not on a voyage; that she was lying here in port under the care and direction of her owner; that that owner was on the spot, and settled in business here. The contract therefore was made on the land infra corpus comitatus, and is not within the jurisdiction of this court. And the hardship in the present case is much less than in the other; for the owner is not only willing but able to give security; and has indeed restored the vessel to

the possession of the shipwright. The chief and only hardship is his being saddled with costs; which it is said, he has been led to incur, from the former practice, and past decrees of this court in similar cases. I should be sorry, if there were any just ground of complaint against courts of justice. But I apprehend the cause of this complaint is not to be imputed to the court. A different decree may have been pronounced here; but then I suppose it must have been, when the objection has not been taken; and the court can have no other than the judicial knowledge of any case before them. In the only case where this exception has been taken since I sat on this bench, I gave the same decision as I shall now.

On the whole, after maturely considering and weighing all the circumstances of the fact, and the authorities of law in this case, I do adjudge, pronounce and decree, that the warrant issued by this court, against the sloop Two Friends, be quashed; that the vessel be discharged from the custody of the marshal, and that the actor do pay the costs of suit.